**Slip Op. 08-99**

**United States Court of International Trade**

```
WITEX, U.S.A., INC., ET AL.,

                Plaintiff,

          v.                          Before: Pogue, Judge
                                      Consol. Court No. 98-00360

UNITED STATES,

                Defendant.
```

[Judgment for Defendant]

Decided: September 18, 2008

Grunfeld Desiderio Lebowitz, Silverman, & Klestadt, LLP (Curtis W. Knauss), Aitken Irvin, LLP (Bruce Aitken, Bruce de Grazia, and Virginie Lecaillon (consultant)), for the Plaintiff.

Gregory G. Katsas, Assistant Attorney General, Barbara S. Williams, Attorney in Charge, International Trade Field Office, Amy M. Rubin, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Yelena Slepak, Attorney, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, for Defendant.

**OPINION**

**Pogue**, Judge:  This case involves the proper meaning of the term "tileboard" as used in subheading 4411.19.30 of the harmonized Tariff Schedule of the United Stated (1997) ("HTSUS").  Plaintiffs, Witex, U.S.A., Inc. and Mannington Mills ("Witex"), challenge the

United States Customs Service's[1] ("Customs" or "Government")

liquidation of its laminated floor panels ("merchandise"), claiming

that the merchandise should be liquidated as "tileboard" under

heading 4411.19.30[2], HTSUS, and therefore duty free.  The Government

counters that Witex's product is not "tileboard" and therefore

should be classified under the basket, "[o]ther," provision for

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection.  See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. `08-32, at 4 (2003).

[2] 4411      Fiberboard of wood or other ligneous
               materials, whether or not bonded with resins
               or other organic substances:
                    Fiberboard of a density
                    exceeding 0.8 g/cm$^3$:
4411.11.00               Not mechanically worked
                         or surface covered

        *                *                *

4411.19                            Other:
4411.19.20                         Not surface covered (except
                                   for oil treatment)

        *                *                *

                                   Other:
4411.19.30                                Tileboard which has been
                                          continuously worked along
                                          any of its edges and is
                                          dedicated for use in the
                                          construction of walls,
                                          ceilings or other parts
                                          of buildings

4411.19.40                                Other

fiberboard with a density greater than 0.8 g/cm$^3$, and Witex's merchandise should be assessed a duty of 6% <u>ad valorem</u>.  <u>See</u> subheading 4411.19.40, HTSUS.  As is apparent, both of these claimed subheadings are subheadings to heading 4411, for "[f]iberboard."

In its prior decision in this case, <u>Witex, U.S. Inc., et. al.v. United States</u>, 28 CIT 1907 353 F. Supp. 2d 1310, (2004) ("Witex I") the court held that Witex's merchandise is classifiable as fiberboard under HTSUS heading 4411, and so must be classified under either subheading 4411.19.30 or 4411.19.40. The court also rejected cross-motions for summary judgment.  A trial was held on October 26-27, 2005.[3] The court has exclusive jurisdiction over this matter under 28 U.S.C. § 1581(a)(2000).  For the reasons given below, the court sustains Customs' classification of the goods in question under HTSUS 4411.19.40, concluding that Witex's laminated floor panels are not tileboard.[4]

## Applicable Standard

"The proper scope and meaning of a tariff classification

---

[3] This case was stayed, prior to trial, while the parties sought to resolve the matter. That proposed resolution having failed, the court must now decide the merits of the case.

[4] The court once again notes the Government's objections as to whether Witex has sufficiently proved the identity of its merchandise, i.e., to which type of panels, or from what collection, the contested merchandise belonged.  However, because the court finds that all of the merchandise that could possibly be at issue here is correctly classified under HTSUS heading 4411.19.40, we need not address this issue.

term is a question of law . . . while determining whether the goods at issue fall within a particular tariff term as properly construed is a question of fact." Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002) (citations omitted). A Customs' classification decision is subject to de novo review as to the meaning of the tariff provision, pursuant to 28 U.S.C. § 2640, but may be accorded a "respect proportional to its 'power to persuade.'" United States v. Mead, 533 U.S. 218, 235 (2001) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

## Discussion

The analysis of "the proper classification of merchandise entering the United States is directed by the General Rules of Interpretation ('GRIs') of the HTSUS and the Additional United States Rules of Interpretation." Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). According to the GRIs, a court must determine the appropriate heading, and then, "[o]nly after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise." Id. at 1440 (citing GRI 1, 6, HTSUS). As the court has already determined that the proper heading for Witex's merchandise is 4411 (Witex I at 1319), we now turn to the question of whether the merchandise in question is properly

classified under subheading 4411.19.30 or rather 4411.19.40.[5]

Both 4411.19.30 and 4411.19.40 cover fiberboard products with densities greater than 0.8 $g/cm^3$ which are surface covered by more than an oil treatment. Heading 4411.19.40 is the "basket provision" that applies to all products meeting these standards that do not fall under other subheadings. Subheading 4411.19.30, in turn, covers "[t]ileboard which has been continuously worked along any of its edges and is dedicated for use in the construction of walls, ceilings, or other parts of buildings." Subheading 4411.19.30, HTSUS. Thus the terms of subheading 4411.19.30 requires a product to exhibit three features: (1) it must be "tileboard"; (2) which has been continuously worked along any of its edges; and (3) is dedicated for use in the construction of walls, ceilings or other parts of buildings. Both parties essentially agree that Witex's flooring panels satisfy the last two prongs of the test: the panels are tongue-and-grooved along their edges, satisfying the second prong[6]; moreover, the panels are used on "floors" which may be included within the meaning of "other parts of buildings."[7] What

---

[5] Under GRI 6, "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings...."

[6] This is evident from Plaintiff's exhibits 28-30.

[7] While "other parts of buildings" may include floors the exact import of this phrase is not discernable from this bare fact. "Other parts of buildings" here modifies "tileboard" and so if tileboard is not used on floors then floors are not parts

(continued...)

remains to be determined is the meaning of "tileboard".

## A. Definition of "tileboard" in HTSUS or legislative history

"The first step in properly construing a tariff classification term is to determine whether Congress *clearly defined* that term in either the HTSUS or its legislative history."  Russel Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001) (emphasis added).  "Tileboard" is not defined in the HTSUS and, in the court's earlier decision, it held that the legislative history of the tariff heading in question also did not resolve the issue.  Witex I at 1321-1322.

## B. Commercial Meaning

When the HTSUS or legislative history do not define a term, the court looks to the term's common or commercial meaning.  In the summary judgment phase of this case each party asserted that "tileboard" had a commercial meaning which supported their respective positions.  In its earlier decision, the court rejected these claims at that summary judgment phase.  Witex I at 1327

---

[7](...continued)
of a building where "tileboard" is used.  Because ejusdem generis is only applicable where legislative intent is unclear, see 2A Norman J. Singer, Statutes and Statutory Construction § 47.18 at 287-88 (6th ed. 2000), if the Government had established that the clear meaning of "tileboard" required principal use on walls, then "other parts of buildings" could not be read to enlarge the definition of "tileboard."  The government's proof, however, did not resolve this issue.

(holding that neither the existence nor the absence of a commercial designation for "tileboard" had been established). In the present proceeding, however, neither side has put forward any claim that there is a commercial designation for tileboard.[8] Defendant's Post-Trial Brief at 10, Plaintiffs' Post-Trial Brief at 1. As no party now asserts that there is a commercial designation for "tileboard", we move on in our analysis to the question of the common meaning for the term.

## C. Common meaning

When a term is not defined in the HTSUS, nor by legislative history, and does not have a commercial meaning distinct from the common meaning that is general, definite, and uniform, the court will look to the common meaning of the term. August Bentkam v. United Stated, 40 CCPA 70, 78 (1952). The common meaning of a tariff term is a matter of law to be determined by the court. Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997). In determining the common meaning of a tariff term, the court may consult lexicographic sources such as dictionaries as well as scientific authorities, industry sources, and other reliable

---

[8]The Government, in its post-trial brief and reply brief, sometimes refers to the "common and commercial meaning" and distinguishes this from a "commercial designation". However, this can be misleading. It is clear from context that what the Government is interested in is the common meaning, albeit in commerce, of "tileboard", and not any commercial designation.

sources of information.  Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed. Cir. 1995).  "Other reliable sources" may include documentation from the relevant domestic industry and reference sources relied upon by people working in the industry. See Northwest Airlines, Inc. v. United States, 22 CIT 797, 800, 17 F. Supp. 2d 1008, 1011 (1998), S.I. Studd, Inc. v. United States, 17 CIT 661, 666 (1993), aff'd, 24 F.3d 1394 (1994).  See also Boen Hardwood Flooring, Inc. v. United States 357 F.3d 1262 (Fed. Cir. 2004) (using various technical sources to determine the common meaning of "plywood" in HTSUS 4412.)

As noted in the court's previous decision in this case, the court has located a number of dictionary definitions of "tileboard". See  Webster's Third New International Dictionary 2393 (1986) ("1: a board used in interior finishing and made from a large sheet of any of various materials having a decorative coating simulating a tiled surface. 2: a thin large square piece (as of wood) often with beveled edges that is fitted together with other like pieces to cover ceilings or walls."); McGraw-Hill Dictionary of Scientific and Technical Terms 2151 (6th ed. 2003) ("[a] type of wallboard used for interior finishing in which the outer surface is a layer of hard glossy material, usually simulating tile."); Terms of the Trade 342 (4th ed. 2000) ("[a] hardboard panel that has been embossed with a pattern and then coated with epoxy.  The resulting product is designed to look like ceramic tile, for use in kitchens, bathrooms,

etc."); Dictionary of Architecture and Construction 939 (3rd ed. 2000)("1. A wallboard used for interior finishing; usually a base sheet material overlaid with a hard, glossy decorative facing to simulate tile. 2. Square or rectangular boards, usually made of compressed wood or vegetable fibers, often with beveled interlocking edges, used for ceiling or wall covering."); Reed Construction Data at http://www.rsmeans.com/dictionary/index.asp?s=tileboard)("(1) A wallboard with a factory-applied facing which is hard, glossy, and decorated to simulate tile. (2) A square or rectangular board of compressed wood or vegetable fibers, used for ceiling or wall facings.") (Access is free upon registration, which is also free.)

Unfortunately, these definitions, on their own, cannot definitively settle the question of whether Witex's product falls under the common meaning of "tileboard". The most obvious reason why these definitions are not sufficient to settle the matter is that they are too broad, potentially covering products that are not based on fiberboard or even wood. Additionally, the makeup of the surface covering is left unclear in several of the definitions, though the covering is generally defined to be "hard" and "glossy."

Here testimony by Defendant's witness, National Import Specialist ("NIS") Paul Garretto is instructive. NIS Garetto, the import specialist for wood products since 1976, testified that tileboard, as encompassed in Subheading 4411.19.30, would be "a high density fiberboard, 4 by 8. . . or 5 by 5 sheets approximately one-

eighth of an inch thick with edges bullnosed having a scoring of the face which would be embossed or grooved to imitate, once finished, ceramic tiles feel and look. . . [with] what would be called a wet finish meaning that it is applied in. . . liquid coatings." NIS Garetto also testified that one of the coatings would be a "thermosetting resin to give a tough and waterproof surface. The back would also be treated to be moisture resistant" and the product "was designed to be applied in wet areas and in particular to bathtub and shower enclosures." Tr. II 17. Additionally, examples of tileboard submitted for the record at trial require a backing material to which they are applied with adhesive because of their thin nature and are not used on floors because they lack sufficient resistence to abrasion. Tr. II 30, 33.

From this testimony, along with the above definitions, the court can construct a working definition or paradigm example of tileboard: tileboard will consist of a fiberboard backing with density greater than 0.8 $g/cm^3$, sold in a sheet 4' by 8' or 5' by 5' in size, approximately 1/8th inch thick (and so needing further backing before being attached, via an adhesive, to a wall), with bullnosed (rounded) edges and covered with a water-resistant surface designed to look like a ceramic tile via a "wet" application process, and would be used on walls or ceilings but not on floors. This working definition fits the physical examples of merchandise marketed as "tileboard" and submitted for the record at trial.

Defense exhibits S and T.

It is clear that Witex's products do not fall within this paradigm as they tend to be thicker, have "tongue and groove" rather than bullnosed edges, are sold in different sizes, do not usually have a surface that looks like ceramic tile, are resistant to abrasion and so are suitable to use on floors, are not applied via an adhesive to a backing, and do not have a "wet" finish but rather a laminated one.[9]

The court cannot simply end its analysis at this point, however, because, as noted by NIS Garetto, not all of these characteristics of the paradigm example of tileboard are firmly and precisely applied, even by Customs itself. A product could deviate from almost any one of these features and still be tileboard. For example, a product could have a finish that, rather than ceramic tile, looks like marble or granite, or has a floral print or a print to look like wood, or has no design at all. Tr.II 31, 64, 84. Similarly, it appears to the court, and is indirectly supported by NIS Garetto's testimony, that a product could be "worked" on the edges in a manner other than bullnosing. Tr. II 71-72. In addition, a higher thickness may sometimes be acceptable, Tr. II 84-85, 87, and, with a higher thickness, a backing board may not be needed.

---

[9]This is again apparent not only from Plaintiff's briefs and testimony but also from Plaintiff's exhibits 28-31.

The single element that does not seem to have a tolerance for variation is in the nature of the top layer of tileboard. Several factors point to this. First, NIS Garetto, in his testimony, insisted that tileboard, in his understanding of the term, always had a "wet" finish, meaning one where the hard surface is applied in liquid form, as opposed to a laminated surface. Tr. II, 32-33, 58-63, 105-107.[10] Secondly, while the various dictionary definitions and technical sources noted by the court do not explicitly rule out a laminated surface they seem more clearly compatible with a non-laminated surface than with a laminated one. Specifically, none of these definitions state or imply that tileboard has a laminated finish. Next, all manufacturers known to the court who produce a product that is clearly tileboard use a wet finish while none use a laminated finish. Finally, evidence may be gathered from the structure of the HTSUS itself. In the tariff provision immediately following the provision containing the tileboard subheading – i.e., fiberboard of a density exceeding 0.5 g/cm$^3$ but not exceeding 0.8 g/cm$^3$ -- specific mention is made of "laminated boards". HTSUS, 4411.29.20. But, no mention of laminated boards is made in subheading 4411.19.30, the subheading

---

[10] In its post-trial brief, Witex appears to misunderstand this aspect of NIS Garetto's testimony. While, on cross-examination, Mr. Garetto did testify that a melamine surface could be laminated, Tr. II, 83, and that a backing board for tileboard could be laminated, Tr. II, 105, he did not contradict his testimony that the top surface of tileboard could not be laminated.

for tileboard.  If Congress had intended for laminated boards to be classified in subheading 4411.19.30, it could have so specified, as it did in 4411.29.20.  All of these factors weigh in favor of a determination that laminated boards, like those produced by Witex, are not tileboard.

As noted above, the court may make references to various sources, including dictionaries, technical sources, trade materials, and other reliable sources (such as witnesses like NIS Garetto) in determining the common meaning of a tariff term.  All of these sources, without exception, support the conclusion that tileboard, as encompassed in HTSUS 4411.19.30, must have a wet finish and may not have a laminated finish.

## Conclusion

For the foregoing reasons the court sustains Customs' classification of Witex's products under heading 4411.19.40. Judgment will be entered accordingly.


                                            /s/ Donald C. Pogue
                                         Donald C. Pogue, Judge


Dated: September 18, 2008
       New York, New York