# United States Court of Appeals for the Federal Circuit

2008-1605

FAUS GROUP, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Daniel G. Jarcho, McKenna Long & Aldridge LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Brett I. Harris, Pisani & Roll PLLC, of Washington, DC.

Amy M. Rubin, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Barbara S. Williams, Attorney in Charge, and Jeanne E. Davidson, Director, of Washington, DC. Of counsel on the brief was Yelena Slepak, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Donald C. Pogue

# United States Court of Appeals for the Federal Circuit

2008-1605

FAUS GROUP, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in
case no. 03-00313, Judge Donald C. Pogue.

_____

DECIDED:  September 25, 2009
_____

Before SCHALL, PLAGER, and PROST, <u>Circuit Judges</u>.

PLAGER, <u>Circuit Judge</u>.

The issue in this classification case is whether laminated flooring panels imported by Faus Group, Inc. (Faus) are properly classified as "fiberboard" under heading 4411 of the Harmonized Tariff Schedules of the United States (HTSUS), as the United States Customs Service (Customs) classified the goods, or as "builders' joinery" under heading 4418, as Faus contends.  The United States Court of International Trade sustained Customs's classification.  For the reasons that follow, we hold that the proper classification is under heading 4418, and more specifically under subheading

4418.90.40, a residual provision. We therefore reverse the judgment of the Court of International Trade.

BACKGROUND

The imported goods at issue in this case are laminated flooring panels made with a core of fiberboard that has a density between 0.85 and 0.95 g/cm$^3$. A color photograph overlay on each panel simulates the appearance of a natural wood product. The panels are non-structural finished articles designed to be installed by end users over a structural subfloor. Each panel has tongue-and-groove joints on its edges to facilitate assembly with other like flooring panels.

Customs classified the flooring panels under HTSUS heading 4411,[1] which reads: "Fiberboard of wood or other ligneous materials, whether or not bonded with resins or other organic substances." Within heading 4411, Customs classified the goods under subheading 4411.19.40, a residual provision that reads: "Fiberboard of a density exceeding 0.8 g/cm$^3$: Other: Other: Other." The duty rate for subheading 4411.19.40 is 6% *ad valorem*.

Faus protested Customs's classification. After Customs denied the protest, Faus filed suit in the Court of International Trade. Faus's complaint alleged that the merchandise is properly classifiable under heading 4418, which reads: "Builders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes." Faus asserted that within heading 4418 the proper subheading is 4418.30.00 ("Parquet panels"), free of duty. In the alternative, Faus urged that the

---

[1]     All HTSUS citations are to the 2001 version.

goods should be classified under subheading 4418.90.40 ("Other: Other"), at the rate of 3.2% *ad valorem*.

In response to the Government's position, Faus further alleged that if its flooring products are to be classified under the Government's preferred heading of 4411, the proper subheading is 4411.19.30, which reads: "Fiberboard of a density exceeding 0.8 g/cm$^3$: Other: Other: Tileboard which has been continuously worked along any of its edges and is dedicated for use in the construction of walls, ceilings or other parts of buildings." Subheading 4411.19.30 is a duty-free provision.

The parties filed cross-motions for summary judgment. In a fifty-three page analysis, an analysis that can only be described as Talmudic in its breadth and thoroughness, the trial court parsed the verbiage contained in the competing headings, explored dictionary definitions, and sorted through a wealth of prior cases on the construction of HTSUS headings. Faus Group, Inc. v. United States, 358 F. Supp. 2d 1244 (Ct. Int'l Trade 2004). The trial court determined that the imported goods are prima facie classifiable under both heading 4418 and heading 4411. Id. at 1249-65. The court then applied General Rule of Interpretation (GRI) 3(a), the rule of relative specificity, to conclude that the products should be classified under heading 4411 because it is the more specific of the two headings. Id. at 1266-69.

The parties had not addressed the question of under which subheading of 4411 the merchandise would fall if the panels were classifiable under that heading, relying instead on arguments presented in a companion case involving similar flooring panels, Witex, U.S.A., Inc. v. United States, 353 F. Supp. 2d 1310 (Ct. Int'l Trade 2004). In that case, the trial court denied the parties' cross-motions for summary judgment after

finding the record insufficient to either establish or exclude the possibility of a commercial designation for the term "tileboard" in subheading 4411.19.30. Applying its reasoning in Witex to this case, the trial court concluded that summary judgment was inappropriate and set the case for trial.

Faus subsequently abandoned its argument that the correct subheading under heading 4411 was 4411.19.30 ("tileboard"), and thus there were no triable issues remaining. The trial court, however, delayed entry of final judgment until final judgment in the Witex case was entered. After trial in Witex, the court found that the flooring panels at issue were not "tileboard," and therefore were properly classified by Customs under 4411.19.40, the residual provision for fiberboard. Witex, U.S.A., Inc. v. United States, 577 F. Supp. 2d 1353 (Ct. Int'l Trade 2008). The trial court then entered final judgment against Faus in this case. Faus Group, Inc. v. United States, 575 F. Supp. 2d 1388 (Ct. Int'l Trade 2008).

Faus filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The specific issue before us on appeal is whether the laminated flooring panels imported by Faus are properly classified under heading 4411, fiberboard, as the Government contends, or under heading 4418, builders' joinery, as Faus contends. The trial court ultimately decided this issue in favor of the Government.

A classification decision involves two steps. The first step addresses the proper meaning of the relevant tariff provisions, which is a question of law. Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The second step involves

determining whether the merchandise at issue falls within a particular tariff provision as construed, which, when disputed, is a question of fact. Id. However, when, as here, there is no factual dispute regarding the merchandise, its structure and use, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions. See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 (Fed. Cir. 1999); Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365-66 (Fed. Cir. 1998). While we accord deference to a Customs classification ruling relative to its "power to persuade," United States v. Mead Corp., 533 U.S. 218, 235 (2001) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)), we have "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

When determining the correct classification for merchandise, a court first construes the language of the headings in question, in light of any related section or chapter notes. Orlando Food, 140 F.3d at 1440 (citing GRI 1). If goods are prima facie classifiable under two or more headings, the court compares the language of the headings and classifies the goods under the heading providing the most specific description. Id. (citing GRI 3). Only after determining the proper heading does the court look to the subheadings to decide the correct classification for the merchandise. Id. (citing GRI 6).

As did the trial court, we begin our analysis with heading 4418. Faus argues that the trial court correctly determined that the laminated flooring panels at issue are prima

facie classifiable under that heading as "[b]uilders' joinery." The Government responds that, under a proper interpretation of heading 4418, that classification cannot be applied to the merchandise in question.

We agree with Faus. Based on the definitions of the term's two key words, "builders'" and "joinery," the trial court defined "builders' joinery" as "already joined pieces of wood or wood products capable of being joined with joints" that "function as non-structural elements of a building" and are used as "finishing . . . for the interior of a building." Faus, 358 F. Supp. 2d at 1253. The court also noted that according to Note 3 to HTSUS Chapter 44, heading 4418 applies to articles of fiberboard just as it applies to articles of wood.

The Government does not challenge the trial court's definition of "builders' joinery," a definition we accept for purposes of this case. Nor does the Government contend that the flooring panels imported by Faus fail to meet that general description. Instead, the Government maintains that heading 4418 includes only the products specifically identified in the heading, and to non-structural builders' products that are outside the scope of other headings. The trial court rejected the Government's position, and so do we.

First, while the plain language of heading 4418 states that builders' joinery "includ[es] cellular wood panels and assembled parquet panels," that does not indicate that the heading is limited only to those exemplars. Furthermore, nothing in heading 4418 suggests that it applies only to products that are not described by the language of other provisions. Indeed, as noted, the HTSUS General Rules of Interpretation contemplate that products may be described by multiple headings, and include rules

specifically to address such situations. See GRI 3 (setting forth classification rules when "goods are, *prima facie*, classifiable under two or more headings").

Much of the argument in this case centers on the meaning of Note 4 to Chapter 44 (hereafter Note 4), which provides:

> Products of heading 4410, 4411 or 4412 may be worked to form the shapes provided for in respect of the articles of heading 4409 [i.e., wood continuously shaped (tongued, grooved, etc.) along any of its edges or faces], curved, corrugated, perforated, cut or formed to shapes other than square or rectangular or submitted to any other operation *provided it does not give them the character of articles of other headings*. (Emphasis added.)

The dispute involves the extent to which raw fiberboard that has been processed to the point of having the character of articles of other headings is removed from the scope of heading 4411 by the proviso at the end of the note. Contrary to the Government's argument, however, Note 4 has no effect on the scope of heading 4418. Even if the Government is correct that Note 4 does not exclude the products at issue from coming within heading 4411, Note 4 does not narrow other headings such as heading 4418 by excluding those products that also fit within heading 4411. As discussed, goods can be, and often are, classifiable under more than one heading.

Having concluded that the trial court correctly determined that Faus's flooring panels are prima facie classifiable under heading 4418, we turn next to heading 4411. Faus argues on appeal that the trial court erred in interpreting Note 4 to permit classification of the imported goods under heading 4411. Under Faus's reading, fiberboard that has been subject to any of the *enumerated* processes in Note 4 is removed from heading 4411 if the process results in a product with the character of another heading. Since its flooring panels have been tongued and grooved and fall

within the scope of heading 4418, Faus argues, they are excluded from heading 4411. The Government responds that the trial court correctly held that the proviso at the end of Note 4 applies only to "any other operation" (i.e., only *non-enumerated* processes). Therefore, the Government's position is that Note 4 does not remove the imported products from heading 4411.

If we were to hold that the trial court's interpretation of Note 4 was incorrect, then Faus's products would not be prima facie classifiable under heading 4411, leaving heading 4418 as the only possible classification. For argument sake, we will assume that the trial court's interpretation is correct, as the Government urges, and that, in addition to heading 4418, the products are prima facie classifiable under heading 4411. That circumstance then invokes the application of General Rule of Interpretation 3(a), as the trial court recognized. However, our understanding of how GRI 3(a) applies to this case differs from that of the trial court.

According to GRI 3(a), when a product is prima facie classifiable under two or more headings, "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." See Orlando Food, 140 F.3d at 1441. Under this rule, "we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." Id.

In Orlando Food, we compared heading 2103, which covers preparations for sauces, with heading 2002, which covers prepared and preserved tomatoes. We concluded that heading 2103 was "more difficult to satisfy" because producing a preparation for a sauce necessarily involves some degree of processing, whereas

heading 2002 required only minimal processing. Because the requirements of heading 2103 were more difficult to satisfy, we held that it was the more specific heading. Id. at 1441-42.

A similar analysis applies in this case. In order for a product to be classified under heading 4418, using the trial court's definition of "builders' joinery," it is necessary that the raw material (fiberboard or other wood-based material) be processed so that there can be a joining of pieces, or so that products are created that are capable of being joined. In contrast, while fiberboard that has undergone some processing may under Note 4 still come within heading 4411, processing is not a requirement for classification in that heading, which by its plain language includes raw fiberboard. Thus, under Orlando Food, heading 4418 is more difficult to satisfy and therefore more specific than heading 4411. In arriving at the opposite conclusion, the trial court failed to give adequate weight to the "more difficult to satisfy" test described in Orlando Food.

Other cases have determined which of two headings was more specific by considering the range of items covered by each heading or the range of uses of products in each heading. See Russ Berrie & Co. v. United States, 381 F.3d 1334, 1338 (Fed. Cir. 2004) ("imitation jewelry" more specific than "festive articles" because the former covers a narrower set of items); Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1313-14 (Fed. Cir. 2003) ("vanity cases" more specific than "articles of a kind normally carried in the pocket or the handbag" because articles within the latter "vary widely and have different principal uses").

Application of those concepts to the case before us also leads to the conclusion that heading 4418 is more specific than heading 4411. As defined by the trial court,

"builders' joinery" covers only products used as non-structural elements in the construction of buildings. Thus, while heading 4418 may embrace a number of different products, the uses of those products are rather limited. By contrast, heading 4411 is not limited at all by use.

Furthermore, the range of products covered by heading 4411 is less restricted than the Government would have us believe. It is undisputed that heading 4411 covers raw fiberboard, regardless of its use. In addition, under Note 4, heading 4411 includes fiberboard that has been processed as long as it has not been worked to the point of taking on the character of a product under another heading. Finally, under the trial court's interpretation of Note 4, which we have assumed is correct for purposes of this analysis, heading 4411 also covers any fiberboard product that has the character of an article under another heading as long as it was created using one of the many enumerated processes in Note 4. The trial court's statement that "there are few transformations to which fiberboard may be subjected and remain classifiable under heading 4411," Faus, 358 F. Supp. 2d at 1267, is not entirely consistent with its earlier interpretation of Note 4 as establishing only minimal limitations on the types of fiberboard articles classifiable under heading 4411. Thus heading 4411 covers a large variety of unprocessed and processed fiberboard products, whereas heading 4418 covers only processed products (made from fiberboard or other wood-based material) that are used as non-structural elements in the construction of buildings. Because heading 4418 encompasses a narrower range of items and uses, it is the more specific of the two headings.

In sum, according to the rule of relative specificity set forth in GRI 3(a), the imported products at issue in this case should be classified under heading 4418, which we have concluded is more specific than heading 4411. The trial court's conclusion to the contrary was in error.

That leaves the question of the proper subheading under heading 4418. On appeal, Faus has abandoned its earlier position that its goods should be classified as "parquet panels" under 4418.30.00. Therefore, the imported flooring panels should be classified within subheading 4418.90.40, the residual category for "builders' joinery," subject to a duty of 3.2% *ad valorem*.

CONCLUSION

The judgment of the Court of International Trade is

REVERSED.