RICHTER BROS. INC. *v.* UNITED STATES (No. 4901) [1]

United States Court of Customs and Patent Appeals, April 10, 1957

*John D. Rode (Ellsworth F. Qualey* of counsel) for appellant.
*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh* and *Joseph E. Weil,* trial attorneys, of counsel), for the United States.

[Oral argument February 12, 1957, by Mr. Qualey and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

RICH, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, pursuant to its decision, Abstract No. 59993, overruling the protest of the importer and sustaining the action of the Collector of Customs in imposing a duty of 30 per centum ad valorem on the imported merchandise under paragraph 718 (a) of the Tariff Act of 1930 as "Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances."

Appellant claimed in his protest that the imported merchandise should have been classified as "Fish, prepared or preserved in any manner, * * * (except fish packed in oil or in oil and other substances)" and assessed a duty of 6¼ per centum ad valorem under paragraph 718 (b) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T. D. 52739), as made effective by the President's letter of notification dated July 23, 1951 (T. D. 52782).

The pertinent parts of the involved statutes read as follows:

Par. 718 (a). Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances, 30 per centum ad valorem.

[1] C. A. D. 649.

Par. 718 (b).  Fish, prepared or preserved in any manner, when packed in airtight containers weighing with their contents not over 15 pounds each (except fish packed in oil or in oil and other substances):

    \*       \*       \*       \*       \*       \*       \*

Herring (except herring smoked or kippered or in tomato sauce, in immediate containers weighing with their contents over 1 pound each)__6¼% ad val.

Counsel for both parties agree that the only issue here involved is whether the fried herrings at bar were "packed in oil or in oil and other substances."

The only testimony introduced was that of Klaus Moeller, who was manager of the firm which exported the merchandise.  From his deposition it appears that the fish were prepared and packed as follows:

The raw material is fresh herring; head and entrails are removed from the fish and then the herring is cleaned, covered with wheat meal, put on sieves, and then fried in a pan.  The frying fat consists of 50% herring oil and 50% tallow.  After frying, the herring on the sieves is allowed to cool and the fat drains off.  After cooling the herring is packed into tins.  These tins are filled up with a brine of wine/vinegar.  Such brine consists of: wine/vinegar, water, sugar, and salt.  Finally the tins are closed.

Mr. Moeller further testified that the fish, when first received by his firm, consisted of fresh herring, slightly salted, containing from 10 to 20 per centum of natural oil; that the oil used in frying or cooking the fish was necessary for that process; that, after the fish had been cooked, as much of the oil as possible was drained off; that the preceding steps relate to preparation, as distinct from packing; that the fish were then placed in the tins; and that no oil as such, nor any ingredient containing oil, was added to the contents of the tins in packing.

It appears that whatever oil was contained in the tins in which the herring were packed, if indeed there was any, consisted of the natural oil of the fish, plus any residue from the herring oil and tallow in which the fish were fried.  There was no evidence as to how much oil, if any, was absorbed by the fish in the frying process; nor what amount, if any, of the frying oil remained in or on the fish when they were drained and packed.

The Customs Court relied on *Strohmeyer & Arpe Co.* v. *United States,* 5 Ct. Cust. Appls. 527, T. D. 35175, and *International Forwarding Co.* v. *United States,* 52 Treas. Dec. 567, Abstract 3801.

In the *Strohmeyer* case fish had been prepared by boiling in oil, the oil being allowed to drain off after the boiling by putting the fish in baskets of wire netting; tomato sauce was then added, and the whole sealed in cans.  The court found that the oil had not been entirely eliminated from the fish prior to packing; that the sauce contained oil visible to the eye, and that the amount of oil was 5.7%, the major portion of which probably consisted of vegetable oil.  The collector classified the merchandise under the provisions of paragraph 216 of the tariff act of 1913 which provided for "Fish

\* \* \* packed in oil or in oil and other substances \* \* \*." The predecessor of this court affirmed the Board of General Appraisers in overruling the protest, and at page 528 said:

\* \* \* The board held, however, that it is immaterial how the vegetable oil became present in the tins; that if, as a matter of fact, the substance in which the fish were found in the tins as packed consisted of oil and other substances, this is sufficient to bring it within the first provision of the paragraph.

We think this is the correct interpretation of the statute; that the purpose was to provide for an additional duty in case oil alone or oil with other substances was used in the preparation of the fish in packing; and that the provision is not aimed at the method of application, but is intended to reach any case in which oil is part of the substance in which the fish is found packed when offered for importation.

In the present case, no sample of the imported merchandise was introduced in evidence and there was no evidence that the merchandise was analyzed so as to ascertain what percentage of oil, if any, was contained in the tins when the merchandise was imported.

Paragraph 718 (a) of the Tariff Act of 1930 reads in toto as follows:

Fish, *prepared or preserved in any manner, when* packed in oil or in oil and other substances, 30 per centum ad valorem. (Emphasis ours.)

The cases relied on below were under earlier acts which did not use the same language in that the phrase "packed in oil" etc. was not preceded by the words "prepared or preserved in any manner." The last-mentioned phrase obviously includes frying, and "frying," by definition, involves the use of oil. The testimony here is that the oil used in frying was necessary to the frying process. As a matter of common knowledge, it would be most unlikely that all of the oil in which the fish were fried would be removed by draining off "as much of the oil as possible."

We are dealing here with fried herring. The Government concedes that if the only oil in the cans in which the fish were packed was the *natural* oil of the fish this would not in itself be sufficient to make it fish packed in oil and other substances, yet this would necessarily result in the presence of at least some oil in the can. The court below held to the same effect, saying that it could not see any logic in the provisions of subparagraphs 718 (a) and 718 (b) if it be held that the natural oil of the fish should be considered. Having ruled out the natural oil, the lower court then said that the case "turns on the simple proposition as to whether any of the oil in which the herring were fried remained in the fish at the time they were sealed in the cans."

The collector's classification, of course, raised the presumption that the herring were "packed in oil or in oil and other substances" and the burden is on the appellant to show that this was not so. The lower court held that this presumption was not overcome because it was "unable to conclude that everything that was done to the fish prior to the time they were placed in containers constituted preparation, as

distinguished from packing." It then surmised that the herring *could have been saturated* with oil through a frying process and placed in containers while thus saturated. We feel, however, that the evidence in this case directly refutes this possibility. The witness testified that after the herring were fried, "as much of the oil as possible was drained off." It, therefore, seems that the decision of the Customs Court rests on a hypothesis which is directly contrary to the uncontradicted evidence.

Paragraph 718(a), in referring to fish "prepared or preserved in any manner," includes the process of frying and of necessity includes fried fish in which there must be some residuum of oil which is there by reason of the preparation, which precedes packing. The *Strohmeyer* case, relied on below, was decided under the tariff act of 1913 which did not contain the clause "prepared or preserved in any manner" or the phrase *"when* packed." The same is true of the corresponding paragraph of the Tariff Act of 1922, under which the *International Forwarding Co.* case was decided.[1] We, therefore, do not consider these cases to be controlling.

The logic of the *Strohmeyer* case would lead to the conclusion that *any* oil present in the can which originated in the frying process would bring the goods within the "packed in oil or in oil and other substances" provision. This is not consistent with the specific language in paragraphs 718 (a) and (b) which inherently includes the preparatory process of frying, which necessarily involves the presence of some oil in the goods when they are packed.

Nothing was used in the *packing* process, beside the fried fish, except the "brine," which the evidence shows consisted only of "wine/vinegar, water, sugar, and salt."

It is not reasonable to assume that in the Tariff Act of 1930 Congress intended that the merchandise hereinabove described was fish "packed in oil or in oil and other substances" when no oil whatever was used in the actual packing process and as much of the frying oil as possible was drained from the fish after frying.

For the reasons stated, that part of the judgment relating to entry No. 809306, with respect to which the protest was overruled, is *reversed.*

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.

---

[1] The successive provisions, and their evolution are here set out:

1913    216. Fish, except shellfish, by whatever name known, *packed in oil or in oil and other substances*, in bottles, jars, kegs, tin boxes, or cans, 25 per centum ad valorem; all other fish, except shellfish, in tin packages, not specially provided for in this section, 15 per centum ad valorem; * * *.

1922    720. Fish (except shellfish), by whatever name known, *packed in oil or in oil and other substances*, 30 per centum ad valorem; all fish (except shellfish), * * *

1930    718. (a) Fish, *prepared or preserved in any manner*, when packed in oil or in oil and other substances, 30 per centum ad valorem. (Emphasis added.)

JOHNSON, Chief Judge, dissenting.

I respectfully dissent from the decision of the majority in this case.

I do not think the importer has sustained his burden to show that the collector's classification was wrong. A sample of the imported merchandise would have been the best evidence to determine just what was in the tins. An analysis of the merchandise would have shown just what was contained in the tins, but, as stated in the majority opinion "no sample of the imported merchandise was introduced in evidence and there was no evidence that the merchandise was analyzed so as to ascertain what percentage of oil, if any, was contained in the tins when the merchandise was imported."

The essence of the majority opinion seems to be incorporated therein in a paraphrase of the testimony of Klaus Moeller, manager of the firm which exported the merchandise, as follows:

* * * that, after the fish had been cooked, *as much of the oil as possible was drained off;* that the preceding steps relate to preparation, as distinct from packing; that the fish were then placed in the tins; and that no oil as such, nor any ingredient containing oil, was added to the contents of the tins in packing. (Emphasis added.)

The majority contends that the Customs Court's surmisal that the herring could have been saturated with oil through a frying process and placed in containers while thus saturated was refuted by the above italicized testimony of Mr. Moeller, which the majority characterized as "uncontradicted."

It is true that paragraph 718 (a) provides two conditions precedent to classification thereunder, namely, that the fish must be (1) prepared or preserved in any manner and (2) packed in oil or in oil and other substances. I think, however, that the purpose of the clear words of this paragraph would be frustrated were we to conclude that Congress set a fine line of demarcation between the preparing or preserving step and the packing step. Under such a construction, the spirit of the statute could be effectively subverted by one who, desirous of avoiding the higher rate of duty but equally desirous of having oil as part of the packing material, so saturates the fish with oil in the preparing or preserving step that said oil is *effectively* carried over into the packing of said fish.

Moeller's statement to the effect that "as much of the oil as possible was drained off" is ineffectual to rebut the foregoing possibility. It is useless as testimony of probative value; it is a mere *conclusion* of the witness. How much oil was it possible to drain off under existing commercial practices? Under what conditions was the oil drained off? These are questions which, it seems to me, should have been answered, but were not. Moeller has, in effect, taken the determination of the existence of ultimate facts necessary for a determination

of this case from the court and has neatly condensed them in his broad statement. That this statement was uncontradicted is of no moment, for, in view of the foregoing considerations, his conclusion need not be rebutted or contradicted.

I am, therefore, of the opinion that appellant has failed to sustain his double burden of proof, viz: of showing not only that the collector's classification is wrong but what is the correct classification.

For the foregoing reasons, I am of the opinion that the judgment of the Customs Court should be affirmed.

O'CONNELL, J., joins in the dissent.