# United States Court of Appeals for the Federal Circuit

---

**DEL MONTE CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1105

---

Appeal from the United States Court of International Trade in No. 07-CV-0109, Senior Judge Thomas J. Aquilino, Jr.

---

Decided: September 16, 2013

---

BRETT IAN HARRIS, Pisani & Roll PLLC, of Washington, DC, argued for plaintiff-appellant. With him on the brief were ROBERT J. PISANI; and MICHAEL E. ROLLS, of Los Angeles, California.

ALEXANDER J. VANDERWEIDE, Trial Attorney, Civil Division, International Trade Field Office, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, of Washington, DC; and

BARBARA S. WILLIAMS, Attorney in Charge, of New York, New York. Of counsel on the brief was YELENA SLEPAK, Office of the Chief Counsel, United States Customs and Border Protection, of New York, New York.

———————————

Before PROST, O'MALLEY, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Del Monte Corporation imports tuna products consisting of cooked tuna, together with sauce, in a package. U.S. Customs and Border Protection classified two of those products under subheading 1604.14.10 of the Harmonized Tariff Schedule of the United States, which covers tuna packed "in oil," because their sauces include some oil. In addition, Customs appraised the goods based on the price that Del Monte paid its supplier at the time of importation, without adjusting for approximately $1.5 million that Del Monte later received from its supplier after negotiations over the accuracy of the amount originally paid. Del Monte brought suit in the Court of International Trade contesting those two agency determinations. The trade court held that Del Monte's goods were properly classified and valued. We affirm.

## BACKGROUND

The imported merchandise at issue consists of tuna fillets or strips in a sauce, packed in a sealed microwaveable pouch. There are three varieties: Teriyaki, Albacore Lemon & Cracked Pepper, and Yellowfin Lightly Seasoned. In all three, the tuna is not cooked or prepared in oil and is processed separately from the sauce, which is added after the tuna is placed into the pouch. The tuna accounts for 80 percent of the total product weight, and the sauce accounts for the remaining 20 percent. In the Lemon Pepper and Lightly Seasoned products, the sauce contains some sunflower oil (2.48 percent and 0.62 per-

cent of the total weight of the pouch's contents, or 12.4 percent and 3.1 percent of the sauce weight, respectively).

In late 2004, Del Monte requested a ruling on the proper classification of its goods under the Harmonized Tariff Schedule. Customs issued a letter in March 2005 finding that those Del Monte products with oil in their sauces should be classified as "in oil" under subheading 1604.14.10. Del Monte requested reconsideration—arguing that the goods should instead be classified as "not in oil"—but the agency again found that subheading 1604.14.10 was the correct classification.

Apart from deciding how to classify Del Monte's goods, Customs also had to determine how to value them. Chotiwat Manufacturing Co., Ltd., packs the products in Thailand and supplies them to Del Monte. Chotiwat and Del Monte initially estimated that it would cost $1.67 per case to convert the tuna and ingredients into a final product (the "conversion cost") and that Chotiwat would be able to "recover" 40 percent of the tuna for other uses. No formal agreement reflected the parties' alleged understanding, but they did prepare "cost sheets" to use as the basis for calculating the price that Del Monte would pay to Chotiwat.

In 2005, Chotiwat sent invoices to Del Monte that diverged from those estimates: conversion costs were around $3.00 per case and the amount of tuna recovered was lower than expected. Del Monte paid the invoiced prices, and the goods were entered into the United States. Del Monte then initiated discussions with Chotiwat about the charges. After 10 months, the parties agreed that the conversion costs were $1.87 per case and that 40 percent of the tuna could in fact be recovered for other uses. Accordingly, Chotiwat issued a "credit note" to Del Monte for a little over $1.5 million. When Customs computed the final duties owed, it used the invoiced amount that

Del Monte paid at importation, without taking into account the subsequent $1.5 million credit.

In 2007, Del Monte filed suit in the Court of International Trade contesting the agency's decisions to (1) classify the Lemon Pepper and Lightly Seasoned products as "in oil" and (2) assess the transaction value of all entries based on the amount that Del Monte paid at the time of importation. In October 2012, the trade court granted summary judgment for the government on both issues. *Del Monte Corp. v. United States*, 885 F. Supp. 2d 1315 (Ct. Int'l Trade 2012). Del Monte appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

A

Goods imported into the United States are classified under the Harmonized Tariff Schedule. Determining the proper classification requires first construing the relevant provisions of the schedule and then deciding which provision encompasses the merchandise at issue. *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). "[W]hen the nature of the merchandise is undisputed," however, that inquiry "collapses entirely into a question of law" about the meaning and scope of the relevant tariff provisions. *Id.*; *see also Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir. 2009).

To identify the appropriate provision for particular merchandise, we proceed hierarchically, first locating the proper heading before choosing among the possible subheadings. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). At each step, the schedule's text and any applicable section or chapter notes take precedence in construing the provisions: when those sources are enough to decide the classification question, that is the end of the inquiry. *See, e.g.*, *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir.

2011); *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246, 1250 (Fed. Cir. 2004) (stating that we first "determine the applicable heading, if possible, by looking to the terms of the headings and section or chapter notes"). At the subheading level, General Rule of Interpretation (GRI) 6 controls and gives priority to the "terms of those subheadings and any related subheading notes" as well as "the relevant section, chapter, and subchapter notes." Harmonized Tariff Schedule of the United States, USITC Pub. 4368, at GN p.1 (2013), *available at* http://hts.usitc.gov/. Included among the specified "notes" are Additional U.S. Notes, which Customs describes as "legal notes that provide definitions or information on the scope of the pertinent provisions or set additional requirements for classification purposes" and which are "considered to be statutory provisions of law for all purposes." U.S. Customs & Border Prot., *What Every Member of the Trade Community Should Know About: Tariff Classification* 32 (2004); *see also* Harmonized Tariff Schedule of the United States, USITC Pub. 4368, at Preface p.1 (2013).

To decide the classification issue in this case, we need not look beyond the tariff schedule and the Additional U.S. Notes as they read at all relevant times. There is no dispute that Del Monte's products fall under subheading 1604.14; they are prepared or preserved tuna fish packed in an airtight container. The tariff schedule further divides such goods into two groups: those "in oil" (subheading 1604.14.10) and those "not in oil" (subheadings 1604.14.22 and 1604.14.30). Additional U.S. Note 1 to Chapter 16 then explains that "the term 'in oil' means packed in oil or fat, or in added oil or fat and other substances, whether such oil or fat was introduced at the time of packing or prior thereto." For fish products in which the only oil is added as part of a liquid substance introduced at the time of packing, this note makes clear that the goods are considered "in oil" even if the liquid

substance does not consist entirely of oil, and it sets no minimum threshold for the amount of oil that must be present.

Del Monte's products were properly classified as "in oil" under subheading 1604.14.10 according to Additional U.S. Note 1. It is undisputed that the tuna is not cooked in oil, that the tuna is placed in the packaging after being prepared without using any oil, and that a sauce containing some oil is then added to the pouch. That is sufficient to describe the Lemon Pepper and Lightly Seasoned varieties as tuna "packed . . . in added oil . . . and other substances" and thus to bring the goods within the scope of subheading 1604.14.10.

Del Monte's argument on appeal is premised on one case, *Richter Bros. Inc. v. United States*, 44 C.C.P.A. 128 (1957). Del Monte contends that *Richter Bros.* dictates the meaning of "packed in oil" for the relevant tariff provisions, and that the classification of its products was erroneously based on an earlier case, *Strohmeyer & Arpe Co. v. United States*, 5 Ct. Cust. 527 (Ct. Cust. App. 1915), which was overruled by *Richter Bros.* Those two cases, however, concern products that differ from Del Monte's in a critical respect: in both, the fish was cooked in oil, which was then partially but not entirely drained off before the fish was packed in a liquid substance, such that some oil from the cooking process subsequently made its way into the liquid introduced at packaging. *See Richter Bros.*, 44 C.C.P.A. at 129; *Strohmeyer*, 5 Ct. Cust. at 527- 28. On those facts, *Strohmeyer* held that the fish was "packed in oil and other substances" because that language was "intended to reach any case in which oil is part of the substance in which the fish is found packed when offered for importation." 5 Ct. Cust. at 528. Over 40 years later, citing revised language in the tariff provisions, *Richter Bros.* found that fish that was fried in oil, drained, and then packed in a liquid without oil was not "packed in oil" because "no oil whatever was used in the

actual packing process." 44 C.C.P.A. at 131. The only oil in Del Monte's products, by contrast, arrives in a separate sauce that is added during packaging, after the fish is already in the pouch. Accordingly, although *Richter Bros.* does appear to undermine the broader declaration in *Strohmeyer*, there is no disagreement between those two decisions as to the circumstances present in this case.

B

Imported merchandise must be appraised, when possible, based on its "transaction value." 19 U.S.C. § 1401a(a)(1). The "transaction value" is defined by statute as "the price actually paid or payable for the merchandise when sold for exportation to the United States" (plus some additional amounts), *id.* § 1401a(b)(1), and "[a]ny rebate of, or other decrease in, the price actually paid or payable that is made or otherwise effected between the buyer and seller after the date of the importation of the merchandise into the United States shall be disregarded in determining the transaction value," *id.* § 1401a(b)(4)(B). A regulation concerning transaction value provides that "the price actually paid or payable will be considered without regard to its method of derivation [and] may be arrived at by the application of a formula, such as the price in effect on the date of export in the London Commodity Market." 19 C.F.R. § 152.103(a)(1). The same regulation also states that "[t]he word 'payable' refers to a situation in which the price has been agreed upon, but actual payment has not been made at the time of importation." *Id.*

Del Monte argues that it had agreed to a "formula" with its supplier, Chotiwat, pursuant to which actual and estimated costs would be reconciled after importation, and that the trade court erred in failing to consider 19 C.F.R. § 152.103(a)(1) in order to account for this "formula" in determining transaction value. We see at least two problems with Del Monte's position. First, Del Monte

never cited that regulation to the trade court or argued that its arrangement with Chotiwat constituted a "formula" under § 152.103(a)(1) for purposes of calculating transaction value. Yet the issue that Del Monte asks us to decide is "whether the [trade] court . . . erred in not applying 19 C.F.R. § 152.103(a)(1)."

Second, and in any event, we are not persuaded that the arrangement between Del Monte and Chotiwat qualifies as a "formula" under § 152.103(a)(1). In order for recognition of a "formula" to avoid swallowing the otherwise-strong statutory prohibition on using payments postdating importation to alter the tariffs owed, 19 U.S.C. § 1401a(b)(4)(B), we think that an agreed-upon, preimportation "formula" must be clear and definite. Each of the Customs decisions cited by Del Monte, in which the transaction value calculation included some postimportation adjustments based on actual costs, involved at least that much. We find nothing like that here. There was no written contract, formal policy, or other hallmarks of a formal agreement between Del Monte and Chotiwat setting out a "formula" to be applied. Rather, the parties estimated costs, Chotiwat sent invoices for more, Del Monte paid the full invoiced amount, and the parties then negotiated for months before Chotiwat credited roughly $1.5 million to Del Monte. On those undisputed facts, there is not enough to overcome the statutory mandate to "disregard[]" any post-importation "decrease in[] the price actually paid." 19 U.S.C. § 1401a(b)(4)(B).

## CONCLUSION

Del Monte focuses its appeal on one legal authority for each of the two issues raised—the *Richter Bros.* case for the classification issue, and the "formula" provision of 19 C.F.R. § 152.103(a)(1) for the valuation question. Concluding that neither authority applies to the facts of this case, we affirm the trade court's determination that the imported merchandise was properly classified and valued.

**AFFIRMED**